JAMES I. SHIPMAN and JOHN MARTIN, Plaintiffs, *v.* THE LONG ISLAND RAILROAD COMPANY, Respondent.

CHARLES H. SHIPMAN and JAMES T. SHIPMAN, as Executors, etc., of JAMES I. SHIPMAN, Deceased, Appellants. .

*Practice — the continuance of an action upon the death of a sole plaintiff or defendant is discretionary with the court — when refused because of* laches — *no distinction between legal and equitable actions.*

The right conferred by section 757 of the Code of Civil Procedure, which provides that "in case of the death of a sole plaintiff or a sole defendant, if the cause of action survives or continues, the court must, upon a motion, allow or compel the action to be continued," is not an absolute right, but the allowance of it rests within the sound discretion of the court.

What *laches* are sufficient to justify the court in denying an application that an action be continued under this section of the Code, considered.

*Semble,* that the rule is the same in legal as in equitable actions.

APPEAL by Charles H. Shipman and another, as executors, etc., of the last will and testament of James I. Shipman, deceased, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Queens on the 6th day of June, 1896, denying their motion to revive, continue and prosecute this action in their names as executors, etc., of James I. Shipman, deceased.

*L. Laflin Kellogg,* for the appellants.

*William J. Kelly,* for the respondent.

Order affirmed, with ten dollars costs and disbursements, upon the opinion of the Special Term.

All concurred.

The following is the opinion of the Special Term:

GAYNOR, J.:

This action was commenced in 1865, to recover $47,498.52 for alleged work, material and expenditures in the building of a branch line of railroad for the defendant, and damages for breach of the contract by delays and various refusals by the defendant to do its part of the contract necessary to enable the plaintiffs to seasonably prosecute the work. The answer alleged full payment for all the work done and material furnished, and set up a counterclaim of $65,000 for alleged faulty work and other breaches of the contract by the plaintiffs. The pleadings show the minute and difficult nature of the issues to be tried, involving the actual details of the enterprise from day to day. The plaintiff Martin died in the early stages of the action, the date not being given. The action was referred for trial in 1867. A hearing was had before the referee in December, 1867, at which one of the plaintiffs was partly examined as a witness. Nothing else was done in the action except to adjourn the trial from time to time until March 18, 1868, which was the last-adjourned date. At that point the action seems to have been abandoned. Sixteen years afterwards, viz., in 1884, Shipman, the surviving plaintiff, died, leaving a last will which named his sons, Charles II. Shipman and James T. Shipman, as executors. Not until twelve years afterwards, viz., in April, 1896, did the executors cause the will to be probated and take out letters. And now, upon a notice of motion given on April 27, 1896, they ask that the court allow them to continue the action. The president, and all others who were officers and directors of the defendant when the action was brought, are dead. The lapse of thirty years has probably left the defendant with no one having any knowledge of the many details involved in the controversy. It is not a case for the granting of the motion,

unless the court is without the right to exercise its discretion and may not refuse. Is the contention that the court is without such discretion correct?

By the Code of Procedure of 1848 it was provided that an action should not abate by the death of parties plaintiff or defendant, if the cause of action survived, and that "the court, on motion at any time within one year thereafter, or afterwards on a supplemental complaint, may allow the action to be continued" (§ 121). This was a new provision of law, and its permissive character is to be noted. By the revised Code of 1877 it was provided that "the court must, upon a supplemental summons and complaint, or, in its discretion, upon a motion, if made within one year after decedent's death, in a proper case, allow or compel the action to be continued" (§ 757). This also left a certain discretion to the court, for it was not required to allow a continuance except "in a proper case." But the provision was amended in 1879 to read that "the court must, upon a motion, allow or compel the action to be continued," and so it stands now. Its apparently mandatory terms, that it permits a motion only, and prescribes no limit of time, are to be noted.

In *Holsman* v. *St. John* (90 N. Y. 461), which was an action for damages for breach of contract, the Court of Appeals held plainly and positively that the court had no discretion under this provision as amended in 1879, but that (to quote from the careful and accurate head note) "it is obligatory upon the court to grant a motion to revive," and that "no mere lapse of time can defeat the application." The decisions of the Special Term and General Term of the court below, refusing the application for *laches*, were therefore reversed. But in *Lyon* v. *Park* (111 N. Y. 350), which was also a common-law action, viz., for damages for fraud, the same court held that the court had discretion in the premises, and could deny the application for *laches*, notwithstanding the mandatory words of the said section of the Code, and affirmed the decisions of the Special Term and General Term of the court below, which had denied the application for *laches ;* the learned court of last resort saying that "the right to a continuance of an action on the death of a party, where the cause of action survives, is not of so absolute a character as to preclude the court, in the exercise of a legal discretion, having regard to all the circumstances, from denying a continuance."

While it is for me to accept with respect these opposing decisions, it is not possible for me to follow them both, from which it may follow that I am not required to heed either.

But in the case of equitable actions, the Court of Appeals has uniformly decided that under this same provision of the Code the court has discretion to deny such an application for *laches* (*Coit* v. *Campbell*, 82 N. Y. 509 ; *Greene* v. *Martine*, 84 id. 648 ; *Hayes* v. *Nourse*, 114 id. 608 ; *Duffy* v. *Duffy*, 117 id. 647). These were all equitable actions ; but I do not see how any distinction is to be made between equitable and legal actions in the respect under consideration, though such a distinction seems to be suggested in *Coit* v. *Campbell* (*supra*). The Code provision under consideration makes and intends no such distinction ; and moreover all such distinctions in practice were expressly abolished by the Code of 1848. " The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished " (§ 69 ; present Code, § 3339). The Code did away with the two different systems of practice in legal and equitable actions, and substituted one system for both. It dealt only with the practice. It left the two substantive systems of law and of equity as they were, but inaugurated a single system of practice, applicable to each alike (*Dalton* v. *Vanderveer*, 31 Abb. N. C. 430). Though instances could be cited to show that the change which the Code made has not even yet become an accomplished fact, owing to reluctance to accept it, nevertheless it does not seem that it may be suggested with a semblance of reason that a motion to continue a decedent's equitable action may be denied for *laches*, while a like motion to continue a common-law action may not.

Deeming the said decisions in equitable actions controlling in legal actions also, I deny the motion.